# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| DAVID CHRISTOPHER GLASS | CASE NO. 3:19-CV-01216 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| KRISTY MASSEY FINLEY, ET AL. | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are two Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted – one [doc. # 26] filed by defendant, First Guaranty Mortgage Corporation, and the other [doc. # 28] filed by defendants, Dean Morris, L.L.C. and Kristy Massey Finley.  The motions are unopposed.  For reasons assigned below, it is recommended that the motions to dismiss be GRANTED.

## Background

On September 17, 2019, David Christopher Glass ("Glass") filed the instant $2 million civil lawsuit for non-judicial wrongful foreclosure against defendants, First Guaranty Mortgage Corporation ("FGMC"); its agent, Dean Morris, L.L.C. ("DMC"); and an attorney associated with DMC, Kristy Massey Finley ("Finley").  (Compl.).  The complaint alleges that on December 14, 2011, Glass purchased a home and obtained a $107,500 mortgage loan from American Home Free Mortgage, L.L.C.  ("AHFM").  *Id*., ¶ 12.1.  That same day, AHFM endorsed the note over to FGMC., *Id*., ¶ 12.2; see also Endorsement Allonge to Note; M/Dismiss, Exh.[1]

---

[1] The court may take judicial notice of court records.  *See* discussion, *infra*.

From January 2012 until November 2018, Glass made timely payments to the mortgage servicers. (Compl., ¶ 12.4). In early 2019, FGMC claimed that Glass was behind on his payments and hired a foreclosure attorney to commence foreclosure proceedings. *Id*., ¶ 12.5. On January 30, 2019, FGMC, through its agent, DMC, and attorney Finley, filed a Petition to Enforce Security Interest by Executory Process against Glass in the Fifth Judicial District for the Parish of Richland, State of Louisiana. *Id*., ¶ 12.6; *see also First Guaranty Mortgage Corporation v. Glass*, No. 46889-C (5th JDC 2019) (Compl., Exh.). On February 4, 2019, a Fifth Judicial District Judge ordered the issuance of a writ of seizure and sale for the property affected by the subject mortgage. *Id*. According to plaintiff, the foreclosure was scheduled for April 17, 2019. (Compl., ¶ 12.6).

On April 15, 2019, Glass filed a Chapter 13 petition for bankruptcy protection. *In Re: David Glass*, No. 19-30590 (Bankr. W.D. La.).[2] On his schedule of creditors, Glass acknowledged a $109,388.00 mortgage debt that he opened on December 14, 2011, which he owed to Rushmore Loan Management.[3] *Id*., [doc. #2]. He added, however, that DMC and FGMC needed to be notified about his bankruptcy filing for purposes of this debt. *Id*. Glass further admitted that his debt to Rushmore Loan Management was $17,500 in arrears before he filed his bankruptcy petition. *Id*., [doc. # 10]. The debt was secured by a double-wide mobile home and two acres of land. *Id*., [doc. #s 2 & 10].

On plaintiff's motion, the bankruptcy court dismissed his bankruptcy petition on June 17,

---

[2] The court may take judicial notice of court records. *See* discussion, *infra*.

[3] Plaintiff admitted in his complaint that Rushmore Loan Management Services, L.L.C. was one of the mortgage servicers for his loan. *See* Compl., ¶ 12.4.

2019. *Id.*, [doc. # 21]. The bankruptcy court issued its final decree and closed the case on September 17, 2019. *Id.*, [doc. # 24]. That same day, plaintiff filed the instant suit with this court. On September 18, 2019, the Sheriff sold plaintiff's mortgaged property to the highest bidder, FGMC, for the total sum of $3,128.07. *See* Sheriff's Act of Sale (M/Dismiss, Exh.).

In the instant suit, Glass contends that the foreclosure process was void for lack of evidence and various other deficiencies. For example, he asserts that he never received a loan; rather it was the execution of a signed promissory note in exchange for "electronic credits from the Federal Reserve." Glass further asserts that there was a conspiracy to deprive him of property without the administration of justice in violation of his due process rights under 42 U.S.C. §§ 1983, 1985, and 1986. He contends that the original contract and an accounting of the loan entries were never filed in the wrongful foreclosure case, and therefore, the attorney who signed the foreclosure petition did not have standing to do so.

Plaintiff further argues that he is entitled to rescission of the original loan contract because defendants did not provide full disclosure as required by the Truth in Lending Act ("TILA"). He also asserts a claim for detrimental reliance because he was "tricked" into repaying about $790.00 per month, including insurance and taxes, when a loan never was provided. He alleges that defendants collected on an unlawful debt which provides him with a civil remedy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Glass also claims: to have suffered slanders of title and credit, that defendants violated Louisiana's Unfair Trade Practices and Consumer Protection Act, and that defendants subjected him to intentional infliction of emotional distress. In addition, he asserts that FGMC, and/or its attorney, transmitted to various credit reporting agencies, including Equifax, false, adverse

information about the plaintiff, thereby causing his credit rating to be impaired. Plaintiff seeks a total of $2 million in compensatory and punitive damages stemming from defendants' wrongful conduct.

On October 10, 2019, defendants, Finley, DMC, and FGMC, filed a motion to dismiss for lack of subject matter jurisdiction. They argued that the court lacked diversity jurisdiction, and that a federal question did not appear on the face of plaintiff's complaint. On November 4, 2019, the undersigned recommended that the motion to dismiss be denied because plaintiff plainly invoked several federal causes of action on the face of his complaint.[4] (Nov. 4, 2019, R&R [doc. # 15]). The District Court adopted the R&R on November 21, 2019. [doc. # 17]. Defendants filed an answer to the suit on December 5, 2019. (Answer [doc. # 18]).

On December 16, 2019, defendants filed the instant motions to dismiss for failure to state a claim upon which relief can be granted. In support of FGMC's motion to dismiss, it attached filings from the state court foreclosure proceeding referenced in plaintiff's complaint.

Plaintiff did not file a brief(s) in opposition to the motions to dismiss, and the time to do so has lapsed. *See* Notice of Motion Setting. [doc. # 29]. Accordingly, the motions are deemed unopposed. *Id*. The matter is ripe.

## **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).[5] A pleading states a claim for

---

[4] In their motion to dismiss for lack of subject matter jurisdiction, defendants did not challenge the sufficiency of these federal claims. In fact, they did not even acknowledge them.

[5] Ordinarily, a Rule 12(b) motion must be made before a responsive pleading is filed. *See* Fed.R.Civ.P. 12(b) and *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). However, Rule 12(h)(2) permits a party to assert a defense for failure to state a claim upon which relief can be

relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

---

granted in any pleading permitted under Rule 7(a), or via a Rule 12(c) motion for judgment on the pleadings. Fed.R.Civ.P. 12(h)(2). Here, the court may treat defendants' Rule 12(b)(6) motions as motions for judgment on the pleadings under Rule 12(c). *See Jones, supra* and *PHI, Inc. v. Office & Professional Employees Int.'l Union*, 2010 WL 3034712, *2 (W. D. La. July 30, 2010). In any event, the Fifth Circuit employs the same standard for a Rule 12(c) motion as it does for a Rule 12(b)(6) motion. *PHI, supra* (citations omitted).

(citation omitted).   A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Rule 9(b) requires that circumstances constituting fraud or mistake be alleged with particularity.  Fed.R.Civ.P. 9(b).  The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement.  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).  Allegations of fraud under Louisiana law asserted in federal court implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D. La. Nov. 20, 2008).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).  What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).  At minimum, however, Rule 9(b) requires a plaintiff pleading fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted).  Nonetheless, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)."  *Grubbs*, 565 F.3d at 190.

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint

6

by reference, and matters of which a court may take judicial notice" – including public and state court records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5ᵗʰ Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record); *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 481 n.1 (5th Cir. 2003) (judicial notice of state court records). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5ᵗʰ Cir. 2000) (citations and internal quotation marks omitted).

### Analysis

### I.    Federal Law Claims

a)    18 U.S.C. 241

At one point in his complaint, plaintiff invoked 18 U.S.C. § 241 which criminalizes conspiracies to impede an individual's free exercise of rights under the Constitution and laws of the United States. *See* 18 U.S.C. § 241. This provision, however, is a federal criminal statute that does not confer a private cause of action. *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 760 (5th Cir.1987). Moreover, private citizens do not have a right to compel criminal prosecution; rather, the decision whether to file criminal charges lies within the *discretion* of the prosecutor. *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (citations omitted). Insofar as plaintiff sought relief under this criminal law, his claim fails.

b)    42 U.S.C. 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).  To constitute state action two requirements must be met:  1) "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and 2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n. 18 (1982).  Traditionally, "acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Private entities generally are not considered state actors.  *Meade v. Dillard Dept. Stores*, 275 F.3d 43, 43 (5th Cir. 2001).  Nonetheless, "a private individual may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir.2005) (citations omitted).  Indeed, private parties conspiring with a judge will be deemed to be acting under color of state law no matter if the judge is immune from damages liability.  *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S.Ct. 183 (1980).  However, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 353–54 (5th Cir.2003) (citation omitted).  Furthermore, submitting false evidence which influenced a state court decision does not imply that the attorney acted under color of state law.  *Id.*  Rather, plaintiff must allege facts to plausibly suggest that the state court was a knowing and willing participant in the wrongdoing.

*See Richard, supra.*

Here, the undersigned is not persuaded that plaintiff has met the foregoing requirements. There are no facts to plausibly suggest that there was an agreement between a state actor and the private defendants. Accordingly, the court necessarily concludes that the private defendants are not state actors subject to liability under § 1983. *See In re Seaberry*, No. 17-04570, 2019 WL 1590536, at *13 (Bankr. S.D. Miss. Apr. 16, 2019) (statutory foreclosure sale procedures do not constitute "state action" as to invoke the protections of the due process clause of the Fourteenth Amendment) (citations omitted).

Even if plaintiff had demonstrated that one or more of the defendants were state actors, he still must show that the defendant(s) violated one of his constitutional rights. Plaintiff stated in his complaint that there was a conspiracy to deprive him of property without the administration of justice in violation of his due process rights. Again, however, to support a conspiracy claim under § 1983, plaintiff must allege facts that suggest: "1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994) (internal citations omitted). Aside from conclusory allegations, plaintiff has not adduced facts to support a finding that defendants had an "agreement" with anyone and certainly not one with a public official. "Bald allegations that a conspiracy existed are insufficient." *Nall v. Stringer*, 4 F.3d 989 (5th Cir.1993) (citations omitted).

Furthermore, "[t]he Fourteenth Amendment guarantees '[s]ubstantive due process [, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Rogers v. Lee Cty., Mississippi*,

9

684 Fed. Appx. 380, 390 (5th Cir.2017) (citations omitted).  To prevail on this claim, plaintiff

must show that a defendant intentionally or knowingly presented false evidence or fabricated

evidence.  *Id.*  Moreover, defendant's action must "shock the conscience."  *Id.*  Mere mistake

does not suffice.  *Id.*

Plaintiff alleged that defendants filed a wrongful foreclosure suit against him, inter alia,

because they:  1) never provided a loan to him; 2) failed to register the security; 3) failed to file

the original note with the foreclosure petition; 4) failed to provide an accounting of the loan

entries; and 5) as a corporation, lacked the capacity to enter into a contract with an attorney.

However, plaintiff's allegation that he never received a loan is belied by the fact that he

acknowledged the debt on his bankruptcy petition forms.  *See* discussion, *supra*.  Moreover,

apart from the subject loan and mortgage, plaintiff did not set forth any other plausible source for

the funds that were necessary for him to purchase the two acres of land and the double-wide

mobile home at 190 Bradford Cooper Road.  It strains credulity that plaintiff would make

monthly principal and interest payments on a loan for six-plus years, if, as he now contends, he

never received any funds or consideration from the lender in the first instance.

Citing myriad provisions of the Uniform Commercial Code, plaintiff makes several

arguments pertaining to defendants' alleged failure to register the security.  However, "[p]laintiff

may not challenge any assignment to which he was not a party, and . . . the Uniform Commercial

Code ("UCC") does not apply to residential mortgage transactions."  *Henry v. Mortgage Elec.

Registration Sys., Inc.*, No. 15-12469, 2015 WL 9487859, at *7–8 (E.D. Mich. Nov. 30,

2015), R&R adopted, 2015 WL 9478037 (E.D. Mich. Dec. 29, 2015).

Plaintiff's allegation that defendants never filed a copy of the associated note in the

10

foreclosure action is refuted by defendants' production of the record from the foreclosure suit that included a copy of the note.  *See* M/Dismiss, Exh.[6]  Moreover, the foreclosure petition that plaintiff attached to his complaint lists the promissory note as an attachment to the petition.  *See* Compl., Exh.

As to plaintiff's contention that defendants failed to provide an accounting of the loan entries in the foreclosure action, such is not required under Louisiana law.  La. R. S. § 10:9-629(a)(6) ("petition or affidavit need not particularize or specifically identify the records or data upon which such knowledge, information or belief is founded.").  In any event, plaintiff cannot, in good faith, establish any material harm from the alleged omission, as he admitted in his bankruptcy petition that he was $17,500 in arrears on his loan before he filed for bankruptcy.

With regard to plaintiff's argument that defendant, FGMC, as a corporation, lacked the capacity to enter into a contract with an attorney, Louisiana law provides to the contrary.  *See* La. R. S. § 12:1-302.[7]  Accordingly, plaintiff's argument fails.

In sum, plaintiff did not allege facts to plausibly show that defendants intentionally misled the state court in the foreclosure action.  Certainly, defendants' actions do not shock the conscience, as required to support a violation of substantive due process.[8]

---

[6] Plaintiff did not oppose the instant motions, and thus, did not contest the authenticity of defendants' production.

[7] There is no indication that the law of the state where FGMC was incorporated materially differs from the law in this state.

[8] The court does not read plaintiff's complaint as attempting to assert a claim for violation of procedural due process. Defendants sought and obtained court approval before the property was seized and sold.  Moreover, according to the record of the state court proceedings produced by defendants, plaintiff took advantage of the opportunity to contest the foreclosure by filing various pre-seizure notices and motions.  It also is well settled that Louisiana's executory process

c)    42 U.S.C. 1985

The court observes that 42 U.S.C. § 1985(3)[9] prohibits "two or more persons" from conspiring to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ." 42 U.S.C. § 1985(3).  To state a cause of action under 42 U.S.C. § 1985(3), plaintiff must allege that (1) defendants were involved in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or persons of the equal protection of the laws; and (3) that defendants acted in furtherance of the object of the conspiracy, whereby (4) the plaintiff was either injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  In addition, the conspiracy must have been motivated by racial animus.  *Word of Faith World Outreach Cent. Church v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996).  Plaintiff also must "allege specific facts to show an agreement." *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir.2004).  Conclusory allegations of conspiracy do not suffice.  *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986).

For the same reasons that plaintiff failed to state a claim for conspiracy under § 1983, he also failed to state a claim for relief under § 1985.  He also did not allege facts to show that defendants were motivated by racial animus.

d)    42 U.S.C. 1986

Plaintiff further invoked 42 U.S.C. § 1986, which provides that "[e]very person who,

---

is constitutional.  *See Roberts v. Am. Bank & Tr. Co., Inc.*, 835 F.Supp.2d 183, 208 (E.D. La. 2011) (citations omitted).

[9] Plaintiff's complaint did not include any facts to suggest that §§ 1985(1) and (2) might apply here.

having knowledge that any of the wrongs conspired to be done, **and mentioned in section 1985** .

. . are about to be committed, and having power to prevent or aid ... neglects or refuses so to do

... shall be liable to the party injured." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir.

2010) (citing 42 U.S.C. § 1986) (emphasis added). Therefore, for plaintiff to enjoy a viable

claim under § 1986, he also must state a claim under § 1985. However, the court's having

determined that plaintiff did not state a claim for relief under § 1985, *see* discussion, *supra*, the

same fate necessarily befalls his claim under § 1986.

　　　e)　　Truth in Lending Act

　　　The Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., generally allows a

consumer three days following the consummation of a transaction to rescind a credit contract.

*Garcia v. JPMorgan Chase Bank, N.A.*, No. 14-547, 2014 WL 12876371, at *3 (W.D. Tex. July

18, 2014) (citing 15 U.S.C. § 1635(a)). TILA, however, does not apply to "residential mortgage

transactions." *Roberts v. Am. Bank & Tr. Co., Inc.*, 835 F.Supp.2d 183, 196 (E.D. La.2011)

(citing 15 U.S.C. § 1635(e)). Moreover, according to the terms of the mortgage attached to

plaintiff's complaint, plaintiff is obliged to use the subject property as his principal residence.

(Louisiana Mortgage; Compl. Exh.). Accordingly, TILA does not apply to the subject

transaction.

　　　Even if TILA did apply, the right of rescission has a three-year statute of limitations that

accrues on the date that the financial transaction was consummated. *Garcia, supra* (citations

omitted). In this case, the mortgage was signed on December 14, 2011. (Louisiana Mortgage;

Compl. Exh.). Consequently, plaintiff's TILA claim is time-barred.

f)     Racketeer Influenced and Corrupt Organization Act ("RICO")

"Under the civil RICO statute, [a]ny person injured in his business or property by reason of a violation of section 1962 can sue for treble damages and fees." *Welborn v. Bank of New York Mellon Corp.*, 557 F. App'x 383, 386 (5th Cir. 2014) (citation and internal quotation marks omitted). Thus, a civil RICO claim requires proof of three elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citations omitted). Furthermore, "[a] pattern of racketeering activity consists of *two* or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (emphasis added).

Glass appears to contend that FGMC collected an unlawful debt that included a usurious interest rate. (Compl., ¶ 6.1, et seq.). However, according to the foreclosure petition attached to plaintiff's complaint, FGMC charged interest of 3.625% on the loan. (Compl., Petition). Based on this court's experience, the foregoing rate is not usurious.[10] Furthermore, insofar as plaintiff intended to argue that the foreclosure suit itself constituted the predicate criminal act as required under RICO, that single proceeding, even if it had been criminal, does not suffice to establish a pattern of continued racketeering activity. *See Bordelon v. Wells Fargo Fin. Louisiana, LLC*, No. 18-2563, 2018 WL 3587690, at *4–5 (E.D. La. July 26, 2018), *reconsideration denied,* 2018 WL 4095121 (E.D. La. Aug. 28, 2018). Finally, plaintiff did not allege facts to plausibly show that he never received a loan in the first instance. *See* discussion, *supra*

---

[10] In fact, the foregoing rate is lower than the judicial interest in Louisiana. *See* https://www.lsba.org/Members/JudicialInterestRate.aspx (last visited on Jan. 14, 2020).

g)   <u>Slander of Credit</u>

One of plaintiff's claims is titled "slander of credit," whereby he seeks statutory and punitive damages under federal and state law stemming from the impairment of his credit rating by defendants.  Later in his complaint, plaintiff added that defendants transmitted false information to various reporting agencies, including Equifax, that caused his credit to be impaired.  Upon review, it appears that plaintiff intended to invoke the Fair Credit Report Act ("FCRA"), 16 U.S.C. §§ 1681-1681x, which Congress enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 127 S.Ct. 2201, 2205 (2007).  The FCRA seeks to make "consumer reporting agencies exercise their grave responsibilities in assembling and evaluating consumers' credit, and disseminating information about consumers' credit with fairness, impartiality, and a respect for the consumer's right to privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal citations omitted).

The FRCA imposes certain duties on sources – called "furnishers" -- that provide credit information to consumer reporting agencies.  15 U.S.C. § 1681s-2(b).  However, to trigger the duties under § 1681s-2(b), the consumer reporting agency first must notify the furnisher that a consumer had disputed the accuracy or completeness of information provided to the consumer reporting agency.  *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639–40 (5th Cir.2002).

Here, plaintiff did not allege facts to show that defendants received notice from a consumer reporting agency as required to trigger the duties owed under § 1681s-2(b).  Accordingly, plaintiff's FRCA claim fails as a matter of law.  *Young, supra*.

The court further observes that "the FRCA preempts state law defamation or negligent reporting claims unless the plaintiff consumer proves 'malice or willful intent to injure' him." *Young, supra* (citing *inter alia* 15 U.S.C. § 1681h(e)).  In this case, plaintiff did not allege any facts to plausibly suggest that defendants reported any information with malice or willful intent towards him. *See Young, supra*.[11]  Plaintiff's claim for slander of title suffers the same fatal deficiency.[12]

h)    Fair Debt Collections Practices Act ("FDCPA")[13]

Congress enacted the FDCPA in an effort to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Any debt collector who fails to comply with the FDCPA's provisions is civilly liable for actual damages sustained by the individual debtor, additional damages not greater than $1,000, plus costs and reasonable attorney's fees.  15 U.S.C. § 1692k(a).

To prevail under the FDCPA, plaintiff must show that:  "(1) [he has] been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."

---

[11] The court reiterates that plaintiff acknowledged in his bankruptcy petition that he was in arrears with his loan payments on the subject mortgage. *See* discussion, *supra*.

[12] In Louisiana, a slander of title action requires a showing of actual malice and the absence of probable cause. *Lejeune v. Redd*, 478 So.2d 717, 722 (La. App. 1st Cir. 1985).

[13] The court previously observed that plaintiff had expressed an interest in amending his complaint to assert a claim under the FDCPA. *See* Nov. 4, 2019, R&R.  There is no indication that he ever did.  However, to the extent that plaintiff's existing complaint may be construed to support invocation of the FDCPA, the court will proceed to address this claim.

16

*Johnson v. Attorney Office of Newman, Mathis, Brady & Spedale*, No. 12-706, 2013 WL 6834381 (M.D. La. Dec. 23, 2013) (citation omitted).

Here, plaintiff did not allege requisite facts to support any element of an FDCPA claim against any of the defendants, and the claim necessarily fails.[14]

## II.    State Law Claims

a)    <u>Breach of Contract</u>

The essential, bottom line elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.  *Favrot v. Favrot*, 68 So.3d 1099, 1108–09 (La. App. 4th Cir. 2011) (citations omitted).  Plaintiff appears to contend that AHFM was obliged to provide him with a loan, but never did.  Of course, AHFM is not a party to this case, and plaintiff did not explain why the existing defendants should be liable for AHFM's alleged breach.

Even so, the plaintiff's contention that he never received any consideration or benefit from the mortgage loan is not plausible.  As stated earlier, plaintiff did not set forth any other source of funding for his acquisition of the home and property that is subject to the mortgage.  Moreover, it simply is implausible that plaintiff made principal and interest payments for seven years on a loan that he only now contends that he never received.  The court will not indulge plaintiff's fanciful allegation.

---

[14] Moreover, a "debt collector" subject to the FDCA does not include a consumer's creditors, a mortgage servicing company, or assignee of a debt (as long as the debt was not in default at the time it was assigned).  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985) (citations omitted).  Thus, at minimum, the FDCPA does not even apply to defendant FGMC.

b)  Fraud/Misrepresentation

Under Louisiana law,[15] the elements of a claim for delictual fraud or intentional misrepresentation include:  "(a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."  *Guidry v. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted).  Similarly, to set forth a claim for negligent misrepresentation:

> (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation.

*Kadlec Medical Center v. Lakeview Anesthesia*, 527 F.3d 412, 418 (5th Cir. 2008) (citation omitted) (citation omitted); La. Civ. Code Arts. 2315-2316.

In his complaint, plaintiff asserts in conclusory terms that defendants did not provide full disclosure.  (Compl., ¶ 3.1, et seq.).  Apparently, defendants failed to disclose to plaintiff that his original debt was zero because his "financial asset" was exchanged for promissory notes in an even exchange.  *Id*.  Plaintiff's argument, however, is belied by the fact that he acknowledged the debt in his bankruptcy petition.  Plaintiff is judicially estopped from taking a contrary position in this suit.  Furthermore, if, as plaintiff now seems to contend, he never received any consideration from the mortgage and note that he signed in 2011, that should have been immediately apparent to him at that time such that he could not reasonably have relied on the alleged misrepresentation to make debt payments for the next seven years.

---

[15] The parties do not contend that the law of any other state should apply to plaintiff's state law claims.  Thus, the court will apply the substantive law of the forum state.

Finally, to the extent that plaintiff's complaint suggests that defendants conspired to intentionally harm him, the court notes that the complaint does not contain any factual allegations to support a conspiracy or scheme to defraud plaintiff. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368 (5th Cir. May 6, 2014) (allegations do not make it plausible that the defendants adopted a conscious commitment to a common scheme designed to achieve an unlawful objective).

In sum, plaintiff fails to set forth requisite facts to support a plausible claim for fraud, intentional misrepresentation, or negligent misrepresentation under Rules 8 and/or 9.

c) Detrimental Reliance

Under Louisiana law, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code Art. 1967 (in pertinent part). To prevail on a claim for detrimental reliance, plaintiff must prove the following by a preponderance of the evidence: "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007) (citation omitted). Detrimental reliance claims are not favored in Louisiana; therefore, they must be examined strictly and carefully. *Id*.

Again, plaintiff relies on his contention that he signed a lien against his property for a loan that he never received. (Compl., ¶ 4.2, et seq.). As a result, he asserts that he was "tricked" into repaying the loan that he never received for seven years. *Id*. This claim is subject to

dismissal for the same reasons that plaintiff failed to state a claim for breach of contract and/or fraud. *See* discussion, *supra*.

    d)   Intentional Infliction of Emotional Distress

Under Louisiana law, "[o]ne who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress . . ." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). In defining conduct which is prohibited by the tort of intentional infliction of emotional distress ("IIED"), the Supreme Court stated that,

> [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be left through which irascible tempers may blow off relatively harmless steam . . .

*White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991) (citations omitted).

Further, "[c]onduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous for purposes of the tort of intentional infliction of emotional distress." *Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp.3d 532, 552 (W.D. La.2017) (*citing Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1024-25 (La. 2000)). Moreover, "[t]he actor's conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like." *Perrone v. Rogers*, 234 So.3d 153, 158 (La. App. 1st Cir. 2017). Filing a lawsuit or resort to judicial process does not suffice to support an IIED claim. *See Bordelon, supra* (and cases cited therein).

Here, plaintiff appears to rely on the initiation of the foreclosure proceeding as the basis for his IIED claim. However, he did not plead facts to show that defendants intended or knew that by filing a foreclosure proceeding that it was substantially certain that plaintiff would suffer severe emotional distress. In addition, plaintiff's acknowledgement of the debt, and that he was in arrears in his payments on the debt, preclude the court from reasonably inferring a viable IIED claim in this case. *See* discussion, *supra*.

   e) Intentional Tort Claim against the Attorney Defendants

In Louisiana, it is clear that "an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation." *Montalvo v. Sondes*, 637 So.2d 127, 130 (La. 1994) (citing *Penalber v. Blount,* 550 So.2d 577 (La.1989)). Nonetheless, an attorney may be personally liable to a non-client for his or her own intentional, tortious conduct. *Id*. To state a claim, however, the complaint must allege *facts* showing that the attorney acted maliciously or with an intent to harm the adverse party. *Id*. An attorney's negligent failure to investigate a claim before filing suit does not suffice. *See Montalvo, supra*.

Glass did not allege facts sufficient for the court to reasonably infer that the attorney defendants acted maliciously or with the intent to harm plaintiff – especially given plaintiff's admissions in his bankruptcy suit.

   f) Louisiana Unfair Trade Practices Act

Plaintiff alleged that defendants engaged in a pattern of unfair practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. §

21

51:1401, *et seq.* (Counterclaim, ¶ 4). The LUTPA declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are illegal. La. R.S. 51:1405. Furthermore, the "LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1057 (La. 2010). There is no limitation on those who may assert a LUTPA cause of action. *Id.*

To recover under LUTPA, however, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Quality Envtl. Processes, Inc v. I.P. Petroleum Co., Inc.*, 144 So. 3d 1011, 1025 (La. 2014) (citation omitted). In addition, "the range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." *Id.* (citations and internal quotation marks omitted); *see also Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (LUTPA does not redress acts of negligence or breach of contract).

Here, plaintiff's complaint reflects no more than the bare invocation of LUTPA. *See* Compl., ¶ 9.1. To the extent that plaintiff intended to rely upon the same fanciful allegation that he never received any consideration in exchange for the note that he signed, the court necessarily finds that he fails to state a claim for relief for the same reason that the undersigned found his other claims wanting. *See* discussion, *supra.*

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the generous dose of

22

conclusory allegations set forth in plaintiffs' complaint.  *See Iqbal, supra*.  Furthermore, the remaining allegations do not permit the court to draw the reasonable inference that defendants are liable for the misconduct alleged.  The complaint certainly does not include enough factual allegations to raise the reasonable expectation that discovery will reveal evidence to support the elements of the claims.  *Twombly, supra*.

Nonetheless, the court is obliged to "freely" grant leave to amend "when justice so requires."  Fed.R.Civ.P. 15(a)(2).  Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . ."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th  Cir. 2002).  Here, whilst unlikely, it is conceivable that plaintiff can cure one or more aspects of his deficient pleading via amendment.  Accordingly, the instant recommendation of dismissal is subject to plaintiff's opportunity to seek leave of court to amend his complaint *with a proposed pleading* that cures the deficient allegations – within the deadline to file objections to this report and recommendation.

In the interim, and in the absence of a curative amendment,

IT IS RECOMMENDED that defendants' motions to dismiss for failure to state a claim upon which relief can be granted [doc. #s 26 & 28] be GRANTED, and that plaintiff's claims be DISMISSED, WITH PREJUDICE, in their entirety.  Fed. R. Civ. P. 12(b)(6).[16]

---

[16]  To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).  In any event, the court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 17th day of January 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).